HOWARD v HOWARD

Docket No. 68235. Submitted February 8, 1984, at Lansing.—Decided
     May 1, 1984.

> Gertrude Howard filed a complaint for divorce against Morris
> Howard in Wayne Circuit Court. Morris Howard responded by
> filing a counter-complaint for divorce. A settlement conference
> was scheduled. On the day of the conference, the attorneys had
> already prepared a default judgment of divorce, without the
> knowledge of plaintiff. The court, John Hausner, J., granted a
> default judgment of divorce including a property settlement
> contingent on the attorneys presenting a stipulation and order
> withdrawing plaintiff's complaint and answer to defendant's
> counter-complaint. Judge Hausner never signed a final order
> and judgment of divorce because plaintiff would not thereafter
> grant her approval to the settlement. Defendant's attorney
> then set for hearing a motion for entry of default judgment of
> divorce. The motion for entry of default judgment of divorce
> was granted, over the objection of plaintiff, by Thomas Rou-
> mell, J., acting for Judge Hausner. Plaintiff appeals, contending
> that the trial court erred in entering the default judgment.
> *Held:*
>
> 1. It is likely that plaintiff was not aware of the settlement
> provisions regarding her husband's business interests. If his
> business interests were substantial assets, failure to make
> certain that plaintiff was aware of the provisions was a major
> omission. In view of that omission, plaintiff's consent was not
> valid, and the trial court abused its discretion by entering
> judgment over plaintiff's objection.
>
> 2. The case is remanded to the trial court for a further
> hearing to determine the value of defendant's business inter-

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur 2d, Divorce and Separation § 819 *et seq.*
[2-5] 24 Am Jur 2d, Divorce and Separation §§ 834-836.
     46 Am Jur 2d, Judgments §§ 709, 717, 765.
[3, 4] 41 Am Jur 2d, Incompetent Persons § 95.
[6] 47 Am Jur 2d, Judgments § 1083.
[7] 15A Am Jur 2d, Compromise and Settlement § 11.
[8] 15A Am Jur 2d, Compromise and Settlement §§ 30, 32.

ests on the date the property settlement was entered into and, after such determination, what award, if any, should be made to plaintiff. Otherwise the judgment of divorce is affirmed.

Affirmed in part, reversed in part, and remanded.

1. Divorce — Courts — Property Settlements.

The rule that courts will uphold the validity of property settlements reached through negotiation and agreement by the parties in a divorce action in the absence of fraud, duress or mutual mistake applies whether the settlement is in writing and signed by the parties or their representatives, or whether the settlement is orally placed on the record and consented to by the parties, even though not yet formally entered as part of the divorce judgment.

2. Judgments — Consent Judgments — Modification of Consent Judgments — Divorce — Property Settlements.

A consent judgment, as a general rule, cannot be set aside or modified except for fraud or mutual mistake; property settlement provisions of a divorce judgment, insofar as they rest upon an agreement of the parties, come within the general rule.

3. Appeal — Judgments — Consent Judgments — Mental Capacity to Contract.

A judgment based upon a settlement agreement to which the parties gave actual consent will be overturned only upon a finding of fraud, duress or mutual mistake; where a party alleges that his or her consent, while actually given, was influenced by circumstances of severe stress, the standard to be applied is that of mental capacity to contract.

4. Contracts — Mental Capacity to Contract.

The test of mental capacity to contract is whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged.

5. Appeal — Settlements — Consent — Findings of Fact.

The findings of a trial court concerning the validity of the parties' consent to a settlement agreement placed on the record will not be overturned absent a finding of abuse of discretion.

6. Judgments — Consent Judgments.

A consent judgment is not effective unless the parties in fact consent to it.

7. ATTORNEY AND CLIENT — SETTLEMENT OF CLAIMS.
    A party's attorney may settle his or her claim only if given authority to do so.

8. APPEAL — SETTLEMENTS — COERCION.
    A settlement agreed to in open court by a party through coercion by his or her attorney will not be set aside absent a showing that the other party participated in the coercion.

*John S. Koivuhalme,* for plaintiff.

*Irwin Hoyt Peckham, Jr., P.C.* (by *Irwin Hoyt Peckham, Jr.*), for defendant on appeal.

Before: CYNAR, P.J., and J. H. GILLIS and R. C. ANDERSON,* JJ.

PER CURIAM. Pursuant to a property settlement agreement placed on the record in this divorce action on June 15, 1982, a default judgment of divorce on defendant husband's counter-complaint was entered over the objection of the plaintiff wife. Plaintiff appeals as of right.

The sole issue presented is whether the trial court erred in entering a default judgment of divorce following the settlement agreement in this case.

According to the settlement agreement, plaintiff was awarded a car (1978 Thunderbird), one-half of the proceeds upon the sale of a Detroit house, $11,165.40 payable within 18 months as one-half of the equity of the marital home, $50 per week alimony for a period of three years, furniture and effects agreed upon, and both burial plots. Defendant was awarded the remaining half of the proceeds on the Detroit property, the remaining equity in the marital home, and his businesses, free

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

and clear. Defendant was also ordered to pay a $325 attorney fee.

In the proceedings on the record on the day of the settlement conference, plaintiff expressed some confusion, inability to hear, and concern about the failure of her own counsel to meet and consult with her prior thereto.

The trial judge indicated that the agreement stated on the record must be understood and clearly agreed to by each party. If not, he said, plaintiff could have a trial. After some clarification, plaintiff stated agreement on the record. Both counsel indicated that defendant was to submit proofs on the counter-complaint. After taking defendant's proofs, the trial judge stated that a judgment of divorce would be granted upon presentation of a stipulation and order of withdrawal of plaintiff's complaint and her answer to the counterclaim, together with a judgment containing a provision as heretofore stated, approved by counsel as to form and substance.

Following the settlement agreement hearing, plaintiff discharged her attorney and retained other counsel, who filed objections to defendant's motion for entry of a judgment of divorce.

Following a hearing before a referee, defendant's motion was granted. After a further hearing, the referee's decision was affirmed by another circuit judge. A judgment of divorce was entered.

Courts will uphold the validity of property settlements reached through negotiation and agreement by the parties in a divorce action in the absence of fraud, duress or mutual mistake. This rule applies whether the settlement is in writing and signed by the parties or their representatives, or whether the settlement is orally placed on the record and consented to by the parties, even

though not yet formally entered as part of the divorce judgment by the lower court. See *Kline v Kline,* 92 Mich App 62; 284 NW2d 488 (1979).

In *Tinkle v Tinkle,* 106 Mich App 423; 308 NW2d 241 (1981), a divorce was granted pursuant to a property settlement agreement placed on the record in open court with both parties and their counsel present. Subsequently, before judgment was entered, plaintiff filed a "petition to set aside settlement judgment and bring matter on for trial", claiming she had been under stress with medical problems aggravated by the divorce so that she was unable to fully comprehend the settlement. The Court stated:

"The general rule is that a consent judgment cannot be set aside or modified except for fraud or mutual mistake. Insofar as the property settlement provisions of divorce judgments rest upon agreement of the parties they come within the general rule. * * * There is no claim here that fraud or mutual mistake was practiced by defendant on plaintiff. Neither does plaintiff claim nor prove that she was so insane or mentally ill as to lack capacity to make a binding property settlement agreement.

"With respect to her claim that her phsyical condition, taken together with the pressures of the divorce litigation, prevented her from comprehending that which she said she agreed to, we note that the trial judge, hearing both the divorce proceedings and the petition to set aside the settlement, found plaintiff's claim to be without basis. We decline to upset the trial judge's findings in that regard; she did not abuse her discretion." (Footnotes omitted.) *Tinkle, supra,* p 426.

A similar case, *VanWagoner v VanWagoner,* 131 Mich App 204; 346 NW2d 77 (1983), upheld the entry of a judgment based on a settlement where the plaintiff claimed he did not understand the settlement and had been under duress at the time

it was made because of his physical and mental health. In hearings to set aside the judgment, the plaintiff testified, as did his physician and a psychiatric social worker, to the effect that he was experiencing severe pain and great mental stress at the time of the settlement. The trial court found no basis for relief, stating that the court was satisfied that plaintiff "knew exactly what he was doing". *VanWagoner, supra,* p 209. The Court of Appeals panel found that the lower court had not abused its discretion in denying plaintiff's claim.

The *Tinkle* and *VanWagoner* cases stand for the proposition that where a party gives actual consent to a settlement agreement, a judgment based upon that agreement will be overturned only upon a finding of fraud, duress or mutual mistake. Where a party alleges that his or her consent, while actually given, was influenced by circumstances of severe stress, the standard to be applied is that of mental capacity to contract. The *Van-Wagoner* Court used the following test, taken from *Star Realty, Inc v Bower,* 17 Mich App 248, 250; 169 NW2d 194 (1969), *lv den* 383 Mich 768 (1970):

" 'The well-settled test of mental capacity to contract, properly adopted by the trial court, is whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged. However, to avoid a contract it must appear not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that he had no reasonable perception of the nature or terms of the contract.' "

The finding of the trial court concerning the validity of the parties' consent to a settlement agreement placed on the record will not be over-

turned absent a finding of abuse of discretion. *Tinkle, supra; VanWagoner, supra,* p 214.

In the instant case, however, the plaintiff does not argue that she consented under conditions of extraordinary stress. She argues instead that she did not truly consent at all, for the reasons that she did not understand the nature of the proceedings, that she did not hear all of the settlement terms, and that her trial attorney, having received his $3,000 up-front fee for an uncontested divorce and having negotiated an additional $325 to be paid directly to him by the defendant, did not fully apprise her of what she was agreeing to. The trial court found against her on these claims, and the question presented is whether that finding was an abuse of discretion.

For a consent judgment to become effective, the parties must in fact consent. *Hibbard v Hibbard,* 27 Mich App 112; 183 NW2d 358 (1970), *lv den* 384 Mich 802 (1971). A party's attorney may settle his or her claim only if given authority to do so. *Michigan National Bank of Detroit v Patmon,* 119 Mich App 772; 327 NW2d 355 (1982). A settlement agreed to in open court by a party through coercion by his or her attorney will not be set aside absent a showing that the other party participated in the coercion. *Grand Rapids Growers, Inc v Old Kent Bank & Trust Co,* 99 Mich App 128; 297 NW2d 633 (1980). In the present case, there is no showing of coercion or collusion or lack of authority given to plaintiff's attorney at the settlement hearing.

A reading of the transcript[1] indicates that plaintiff was adequately apprised of the terms of the

[1] While the transcript of the June 15, 1982, settlement agreement hearing was not included in the appeal record submitted, a photostat of the proceeding was attached to the appellant's brief without objection being made.

settlement, except as to the defendant's business interests. After a discussion of the settlement provisions regarding the real estate, which was evenly divided, and certain furnishings, plaintiff's attorney stated: "I believe we have pretty much covered everything. We have the furniture—". At this point, defendant's attorney interrupted and stated:

"*Mr. Peckham:* One additional thing. Any interest that Mr. Howard has in any businesses that he is involved with, specifically, Morris Howard Used Cars or Morris Howard Car Simonizing will be his sole and separate interest.

"*The Court:* Is that correct, counsel?

"*Mr. Goodman:* That is correct.

"*The Court:* Did you hear the proposed settlement that the lawyers stated?

"*Mrs. Howard:* Ah, part of it, yes.

"*Mr. Goodman:* She's a little hard of hearing.

"*Mrs. Howard:* I didn't hear it all.

"*The Court:* We better go over it. She is going to understand it, counsel, because if I accept it, you're going to have to appeal it to have me not enter a judgment, I tell you.

"*Mr. Goodman:* Why don't we outline it for her and come back?

"*The Court:* Let's go over it again rapidly."

The proposed settlement terms were then repeated by Mr. Peckham, with the exception of the provision concerning the defendant's business interests. The following colloquy then ensued:

"*The Court:* Anything else, because I am going to ask both of them. You have got to hear.

"*Mrs. Howard:* Yes, I heard.

"*The Court:* Anything else? Is that it?

"*Mr. Peckham:* That's it.

\* \* \*

"*The Court:* Have you heard the whole settlement, Mrs. Howard?

"*Mrs. Howard:* Yes.

* * *

"*The Court:* Is that the settlement to which you are agreeing?

"*Mrs. Howard:* Well, I will go along with it but * * *

"*The Court:* No, are you agreeing? We are not making you. If you want to go to trial, you can go to trial. Either you agree to it or you don't. Do you want that settlement or do you not? It is up to you. You are not going to offend me one way or the other.

"*Mrs. Howard:* Okay, I agree.

"*The Court:* You agree. Have you had a chance to discuss this thoroughly with your lawyer?

"*Mrs. Howard:* No, I haven't, but I will.

"*The Court:* No, no, we will take a minute now and discuss it with him.

"*Mr. Goodman:* We went through everything. Any questions? You are getting the living room, dining room, burial plots, deep freeze. You are getting everything. Do you understand?

"*The Court:* Have you had a chance to discuss this thoroughly with your lawyer?

"*Mrs. Howard:* Yes.

"*The Court:* Are you satisfied with his advice in this matter?

"*Mrs. Howard:* Yes."


It is likely, based on the foregoing record, that plaintiff was not aware of the settlement provisions regarding defendant's business interests. Defendant alleges, in his brief, that the businesses are not going well. In her complaint, plaintiff alleged that the defendant's income in 1980 was in excess of $100,000, an allegation neither admitted nor denied in defendant's answer. If defendant's business interests were substantial assets, failure to repeat that part of the settlement concerning

these assets after plaintiff stated that she had not heard all of the terms was a major omission. Plaintiff's consent, in view of that omission, was not valid, and the trial court abused its discretion by entering judgment over plaintiff's objection.

At the end of his opinion in *Tinkle*, Judge BEASLEY gave a rather equivocal indication that might provide another avenue of relief for plaintiff:

"While we do not intend to review the equities of property settlements duly agreed to and placed on the record in open court where parties later attempt to renege on such agreements, we do note in this case that the record does not indicate anything unconscionable about the property settlement reached by the parties and their counsel." 106 Mich App 428.

Inasmuch as there was no trial in this case and the settlement hearing transcript is silent in describing or indicating the value of the defendant's business interest, it is not possible to assert that the settlement agreement was unconscionable. If, as plaintiff asserts, the defendant's income was in the six figures, alimony of $50 per week terminating in three years seems meager for a woman in her 60's after a 17-year marriage.

This matter is remanded to the trial court for a further hearing to determine the value on June 15, 1982, of defendant's interest in Morris Howard Used Cars and Howard Car Simonizing, and after such determination, what further award, if any, should be made to plaintiff.

Otherwise, we affirm the judgment of divorce. We do not retain jurisdiction.